SAME TERM.    <i>Before the same Justices.</i>

BABCOCK <i>vs.</i> THE MONTGOMERY COUNTY MUTUAL INSU-<br>RANCE COMPANY.

Under a policy of insurance against loss or damage by fire, where one of the con-
ditions of insurance is that the insurers will be liable for " fire by lightning,"
the underwriters are not liable for the destruction of the dwelling house insured,
by its being rent and torn to pieces by lightning without being burnt or con-
sumed.

Unless there be actual ignition, and the loss be the effect of such ignition, the
insurers are not liable.    There must be a fire, or burning, which is the proxi-
mate cause of the loss.

The practice and usage of other insurance companies, restricting their liability to
losses occasioned by actual burning by lightning, may be resorted to, to show
what the general usage is in regard to losses or damages caused by lightning.

DEMURRER to declaration.    The action was on a policy of insurance dated Sept. 21, 1844, by which the defendants insured the plaintiff for the term of five years, to the amount of $1020 on his dwelling house No. 1 and wood shed, $300 on his dwelling house No. 2, and in different sums upon other buildings, amounting, in the aggregate, to $2000, against all losses or damage which the plaintiff might sustain " by, or by reason, or by means, of fire, not exceeding in the whole the sum of $2000, nor exceeding two-thirds of the value of the said property which may be so lost or damaged," &c.    One of the conditions of insurance referred to, in the policy, and made a part thereof, was the following : " The company will be liable for fire by lightning, but not for any loss or damage by fire happening by

means of any invasion, insurrection," &c. Another condition was, that all persons insured by the company and sustaining "loss or damage by fire," should forthwith give notice thereof to the secretary," &c. The declaration alledged that after the making of the said policy, and during the time therein insured, to wit, on or about the 31st day of August, 1846, the property described in the policy as dwelling house No. 2, and insured for the sum of $300, was struck by lightning, and was prostrated and demolished and by the said fire by lightning overthrown and destroyed; and that by such fire by lightning the plaintiff sustained loss and damage in the destruction of the said building, to the amount of $300. The defendants demurred to the declaration, and assigned the following causes: 1. That the policy declared on was a contract for insurance against loss and damage by fire, but that the loss and damage averred and claimed for, in the plaintiff's declaration, were caused by *lightning* and not by *fire.* That the dwelling house No. 2, averred to have been damaged, was *struck by lightning* and thereby prostrated and demolished; and that this was damage by the *electric fluid,* and not by *fire.* 2. That there was no averment in the declaration, of loss or damage by fire, or by reason or by means of fire. That the building was struck by lightning, and its destruction was the effect of the electric shock; that such was the evident intent and meaning of the averment; that no burning was alledged, nor was it averred that the explosion or shock was caused by fire. Joinder in demurrer.

The following stipulation was entered into between the counsel for the respective parties, dated April 17, 1847: "It is hereby stipulated and agreed by and between the parties in the above entitled cause, that the question and the only question to be made on the argument of the demurrer in the case, before the supreme court, or any other court before which it may be brought, after the demurrer book shall have been made up, shall be the same that was submitted to the Hon. John Willard as referee, and no other, viz.: Whether the destruction of dwelling house No. 2, named in the plaintiff's declaration, by being rent and torn to pieces by lightning, without being burnt or consumed, is

a loss covered and insured against by the policy of insurance set forth and declared upon in said declaration."

*Ward Hunt,* for the plaintiff.    To entitle the plaintiff to recover it is not necessary that there should have been an actual combustion of the subject matter; it is sufficient if fire was the proximate cause of the injury.    (13 *John.* 451.    21 *Wend.* 367. 11 *Peters,* 213.)    Lightning is fire; and a destruction by lightning is destruction by fire, within the policy.    In the ordinary acceptation of language, and according to the popular understanding of the words, lightning is fire.    The building " No. 2" having been prostrated and destroyed by lightning, the plaintiff is entitled to recover.

*C. P. Kirkland,* for the defendants.    By the term " fire," as used in the policy, we are to understand the ordinary phenomenon of combustion.    To establish a cause of action, it must be affirmatively shown that the rending and demolishing effects of lightning were produced by fire.    Lightning is an electrical phenomenon; and though fire is often one of the results of an electric discharge from the clouds to the earth, it is that wonderful and mysterious principle, the *electric fluid,* that produces the shock, and rends and demolishes whatever obstructs its course; and in no sense are those results the products or consequences of *fire.*    The words in the policy are *expressly* that the company will be liable for "*fire* by lightning."    (1.)    The word "*fire*" here is to be construed according to its ordinary signification and meaning.    (*Dow* v. *Whetten,* 8 *Wend.* 167.    *Story on Cont.* § 235.    *Sleight* v. *Rhinelander,* 1 *John.* 233, 4.    *Aquila* v. *Rogers,* 7 *T. R.* 421, 423.    *Roberts* v. *French,* 4 *East,* 135. 1 *Hall,* 166.    2 *Cowen,* 419.    1 *Phil. Ins.* 43, 4.    *Dwar. on Stat.* 762.)    (2.)    The express statement of liability for "*fire* by lightning" excludes any *other* injury or damage by lightning. And it having been shown that lightning may produce injury and destruction *without fire;* and it being conceded that the injury in this case was by rending and tearing without burning,

it follows that this damage is not within the policy. (*Dwar. on Stat.* 713. *Wardens of St. Paul's* v. *The Dean,* 4 *Price,* 78.)

*By the Court,* PRATT, J. This action was brought upon a policy of insurance against loss by fire. The word fire, in contracts of this kind, should be construed in its ordinary signification. (6 *Bac. Abr.* 658.) It should not be confined to any technical and restricted meaning which might be applied to it upon a scientific analysis of its nature and properties, nor should it receive that general and extended signification which by a kind of figure of speech is sometimes applied to the term ; but it should be construed in its ordinary popular sense. Nor is the damage, for which fire insurance companies are liable, to be confined to loss by actual burning or consuming ; but they are liable for all losses which are the immediate consequences of fire or burning. (*City Fire Ins. Co.* v. *Corlies,* 21 *Wend.* 367.) Thus goods injured by being removed to save them from fire, or by water in extinguishing a fire, are within the provisions of the policy. So other cases might be mentioned, where the insurers are liable for damages which can be traced directly to fire as the immediate cause of the loss, and yet the insured article itself be in no danger of being burned or consumed.

But giving to the plaintiff in this cause the benefit of the most liberal rule yet established by legal adjudication, I am wholly unable to arrive at the conclusion that the damage done to the plaintiff's house was a loss within the provisions of the policy.

*First.* The plaintiff has the *onus probandi* upon himself. In order to entitle him to a recovery he must prove that the loss was occasioned by fire ; and as the building was not consumed nor set on fire, he must be able to show that electricity, of sufficient intensity to rend a building, is fire, in the popular and ordinary signification of the term. It is not sufficient to show that fire is one of its constituent principles. He must be able to demonstrate that the rending and destruction of the building were the result of that particular principle. That I think cannot be done in the present state of the science of electricity. It can neither be proved that fire, in its ordinary signi-

Babcock *v.* Montgomery County Mutual Ins. Co.

fication, is a constituent element in electricity; nor, if that be so, that its mechanical or rending effects are the consequences of such fire. Of the actual nature of what we call electricity but little is pretended to be known with certainty. It is even a disputed point among scientific men, who have made it the subject of their investigation, whether it be an actual fluid, or merely a property of other matter. (*Ed. Ency. tit. Electricity.*) The only real knowledge which we possess, in relation to it, is a knowledge of its properties derived from observation of its effects. We find that under certain conditions it exhibits phenomena, or effects, which are the most wonderful as well as the most powerful within the observation of man. These phenomena are divided, by writers upon the science, into three classes, the mechanical, the chemical, and the magnetical; and some writers add a fourth, termed the physiological. (*Ed. Enc. tit. Electricity. Sturgeon's Lectures on Elec.* 124.) When the *fluid,* (if we may be allowed the expression) is excited to a high degree of intensity, the mechanical effects of an electric discharge are manifested by perforating or rending any non-conducting substance against which such discharge may be directed. Excited to a high degree of intensity, its chemical effects are also manifested by fusing metals, and igniting combustible substances. These effects belong to different classes of phenomena, and are, for aught we know, entirely distinct in their character. I have not been able to find any writer, nor was our attention on the argument directed to any author, who insists that the mechanical effects of electricity are produced by its calorific properties, except M. Arago. His theory was that the explosive effects of lightning were caused by its heating properties upon the water and moisture contained in the subject of the explosion. But this theory has not been generally adopted. (*See Lardner's Lectures, subject Electricity.*) Whilst it is admitted that nothing is absolutely known of the method by which heat is evolved in electric phenomena, the theory which is the most generally adopted makes it the result, and not the cause, of the mechanical action. (*Ed. Enc. tit. Heat.*)

    Mr. Sturgeon, an able and lucid lecturer upon the subject of

Babcock *v.* Montgomery County Mutual Ins. Co.

electricity, suggests the existence of two separate fluids which pervade all matter—the electric and the calorific; that heat is evolved, and ignition produced, by the mechanical action of the electric fluid upon the calorific. (*Stur. Lec. p.* 162.) Without assenting to any of the numerous theories which have resulted from speculations upon the subject by men of science, I only allude to them to show that nothing is known with sufficient certainty to form a basis for legal adjudication.

I may remark, in passing, that it is with a considerable degree of diffidence that I dissent from the positions taken by the learned jurist, Judge Willard, who has written an opinion upon the points involved in this case, and which was cited upon the argument. If I understand the position taken by him, it is that if the lightning had not torn the building to pieces it would have set it on fire, and hence he deduces an argument in favor of holding the company liable.

In the first place, I am unable to find any evidence that there was any such alternative in the case. The phenomena of nature are constant: like causes produce like effects; and there is no evidence that the electric fluid which demolished the house was, under the existing circumstances, capable of setting it on fire, or exhibiting any different phenomena from those which it did exhibit. - In the second place, if it were so, it would not alter the case. The contract of the insurers was to indemnify the insured against loss by fire. It by no means follows that they are liable for the damage done by violence to the insured property because the agent by which the violence was effected might have set it on fire. A heated ball or bombshell may injure the building against which it is hurled. It would not do to hold the insurers liable because, if the force which caused it to perforate the wall had been less, or the resistance greater, it might have lodged in the walls and set them on fire.

*Secondly.* If it could be demonstrated that the mechanical action of lightning is the result of its calorific properties, it by no means follows that the damage is occasioned by fire. The terms caloric and fire admit of very different significations. One is the cause and the other the effect. That which is term-

ed caloric seems to pervade every material substance. It may be evolved from a snowball or a piece of ice. Fire, on the other hand, is not an elementary principle, but is the effect produced by the application of heat, or caloric, to combustible substances. Walker says that in the popular acceptation of the word, "fire is the effect of combustion." It is therefore equivalent to ignition or burning.

Unless, therefore, there be actual ignition, and the loss be the effect of such ignition, the insurers are not liable. Not that the identical property to which the damage occurred should be consumed, or even ignited, but there must be a fire or burning which is the proximate cause of the loss. It is immaterial how intense the heat may be; unless it be the effect of ignition, it is not within the terms of the policy. The heat of the sun often contracts timber, from which losses occur; but they would not be considered losses by fire. (*Ellis on Fire Ins.* 273. *Steph. N. P.* 1079. 11 *Petersd. Ab.* 18.) Hence in the case of *Austin* v. *Drewe*, (6 *Taunt.* 436; 4 *Camp.* 360,) it was ruled in the case of an insurance upon the stock of a sugar house, that damage to the stock by the heat of the usual fires in consequence of the accidental mismanagement of the dampers, was not within the policy against loss by fire. Gibbs, Ch. J. ruled, and his ruling was sustained by the court, that if there was a fire it was no answer to say that it was occasioned by negligence or misconduct of servants; but in this case there was no fire, except in the stove where it ought to be, and the loss was occasioned by the confinement of the heat, and not by fire.

*Thirdly.* The terms of the policy exclude the idea that it was intended to cover damage by lightning when there was no ignition. The words of the policy are that the company will be liable for fire by lightning. 1st. If the company intended to insure against all damage by lightning, it seems strange that they should have used that form of expression—that they had not used the phrase directly, "damage or loss by lightning." If the word fire includes in itself lightning, then one of those words was entirely superfluous. It seems obvious to me, therefore, when the parties to the contract make use of the term "fire by

lightning," they use the term lightning not as fire itself, but as an agent capable, under certain circumstances, of causing fire. 2d. The use of the same expression, in the books, strengthens this position ; for the parties will be deemed to use the term in its legal acceptation. Ellis on fire insurance, page 25, says " that it is sometimes expressly stated to remove any doubt, though little could exist, that losses occasioned by fire from lightning will be made good." Kent, in a note to his commentaries, third volume, edition 1836, says that it has been usually held that losses by fire from lightning are within the policy. It is hardly probable that two writers so correct in the use of language would put in the word fire where it would be utterly superfluous if they did not mean to convey the idea of ignition or burning by it. Lord Ellenborough said in *Gordon* v. *Remington*, (1 *Camp.* 123,) " Fire is expressly mentioned in the policy as one of the perils against which the underwriters undertake to indemnify the assured, and if the ship is destroyed by fire it is of no consequence whether this was occasioned by a common accident, or by lightning, or by an act done in duty to the state." (1 *Phil. on Ins.* 632.) And in the Traite des Assurances Terrestres, by De Querault, cited by Judge Willard, I infer it is used in the same sense. I have not had access to the work, but in the citation by the learned judge, the term lightning is evidently spoken of as the cause of fire, and not fire itself. "La compagnie assure contra l'incendie même contre celui provenant du feu du ciel," as I translate it, reads, " The company insures against burning (conflagration) even against that which proceeds from lightning."

So also Pothier, in his Traite du Contract d'assurance, chapter 1, under the head of fire, says, " Les assurers en sant tenus, lorsque c'est par un cas fortuit comme par le feu du ciel ou dans un combat que le feu a pres au vaisseau." " The insurers are liable when the vessel takes fire by accident, as by lightning, or in battle."

In marine policies losses by fire and by perils of the sea are usually specially mentioned as losses for which the insurers will be liable. Among the former is uniformly classed burning or fire

by lightning; and among the latter, damage by lightning. Phillips on Insurance, speaking of marine policies, under the head "loss by fire," (*vol.* 1, *p.* 631,) says, "That the insurers are answerable for the loss when the property is consumed by lightning or takes fire in an engagement with another vessel;" citing Pothier. And under the head, perils of the sea, (*p.* 635,) he enumerates "losses by the winds, waves, lightning, rockshoals," &c. (*See* 2 *Bac. Ab.* 661.)  3d. The practice of other companies, to the by-laws or proposals of some sixteen of which we were referred upon the argument, instead of weakening, strengthens the view which we have taken of the construction of the present policy.  Doubtful terms in a written instrument are to be construed according to the ordinary usages of trade.  The practice and usage of so many companies restricting their liability to losses occasioned by actual burning by lightning shows that the general usage is not to be liable for damage by lightning, unless accompanied by burning.  A fair construction of those policies would not require that the property should be actually consumed, to entitle the assured to indemnity, but that the lightning should cause a fire which fire should be the proximate cause of the loss; the same as a loss by fire in ordinary cases. If that view be correct, I do not see as the terms of the policies in those cases differ, substantially, from that under consideration.  Losses from burning by lightning, and losses from fire by lightning, it seems to me, are equivalent terms, and should be construed as imposing upon the parties the same rights and liabilities.

We are, therefore, of opinion, that the damage which the plaintiff has sustained is not within the provisions of the policy, and that the defendants are not liable in this action.  There must be judgment for the defendants upon the demurrer.

Judgment for the defendants.