BARCALO MANUFACTURING COMPANY, Plaintiff, *v.* FIREMEN'S MUTUAL INSURANCE COMPANY, Defendant.

Fourth Department, October 21, 1965.

*Hodgson, Russ, Andrews, Woods & Goodyear* (*Hugh McM. Russ* and *Richard W. Echtenkamp* of counsel), for plaintiff.

*Ohlin, Damon, Morey, Sawyer & Moot* (*Roy P. Ohlin* and *David R. Knoll* of counsel), for defendant.

Bastow, J. This submitted controversy presents a legal question involving the interpretation of the phrase " all direct loss or damage by fire " as contained in a standard fire insurance policy.

The facts, briefly stated, are that plaintiff as part of the process of manufacturing hand tools was required to anneal the basic tool shapes for a period of one hour at a temperature of 1350 degrees F. This was customarily done by placing them in a gas-fired furnace designed to operate at a maximum temperature of 1750 degrees F. The upper limits of the temperature and the duration of the annealing period were controlled by a temperature control instrument. The process further required the lapse of three or four hours after the forgings had been placed in the furnace to bring the heat to the required temperature and a similar cooling period after the treatment.

On the evening in question plaintiff's employee placed some 1,500 pounds of wrench forgings in the furnace, opened the manual valve on the gas supply line and set the automatic controls for an annealing period of one hour at 1350 degrees F. On returning the following morning (some 8 hours later) it was discovered that the furnace was continuing to function and was " almost white hot ". It is agreed that in an unexplained manner the automatic controls failed to function so that the furnace and forgings therein were totally ruined. The damage sustained by plaintiff presents the issue as to whether or not this was a direct loss by fire within the meaning of the policy.

Through the years the meaning of the word " fire " as used in an insurance policy has never been defined therein. This void has been filled by judicial decisions. Most of these to a greater or lesser extent have been based on the early (1815) case of *Austin* v. *Drew,* 4 Campb. 360, Holt N. P. 126, 171 Eng. Repr. 115, 171 Eng. Repr. 187, 6 Taunt. 436, 2 Marsh. 130, 128 Eng. Repr. 1104. The precise holding in that case that the insured could not recover is clear but the oral statements made by the court (as variously reported) have been the subject of much controversy. (See *Harris* v. *Poland,* 1 K. B. [1941] 462, 468–472; *Scripture* v. *Lowell Mut. Fire Ins. Co.,* 64 Mass. 356, 357–360.)

Recognizing that some limit must be put upon the meaning of the words " loss by fire " judicial decisions have resorted to the somewhat unsatisfactory distinction between a " hostile " fire and a " friendly " fire. This nomenclature is attributed as having been first coined in *Way* v. *Abington Mut. Fire Ins. Co.* (166 Mass. 67). The terms have received a variety of definitions

but in general a friendly fire is one that is deliberately kindled and remains within a designated place while a hostile fire is one that has escaped from the place or container in which it was intended to remain or a fire started with or without human agency in a place where a fire was never expected to be started or maintained.

Professor Vance in his article "Friendly Fires" (1 Conn. Bar J. 284, 289) interpreted *Austin* v. *Drew* (*supra*) as follows: " A fair paraphrase of (Chief Justice Gibbs') description of a fire ' not within the meaning of the policy,' — a friendly fire — would seem to fix these elements: (1) The fire must have been intentionally kindled. (2) It must be confined to the place where it was intended to be. (3) It must not be excessive."

It is recognized, however, that there are several decisions in other jurisdictions holding that although a fire contained in a furnace becomes excessively hot due to the malfunctioning of a thermostat or other cause, it continues to be a friendly fire until it breaks from the container and damages adjacent property. (*First Christian Church* v. *Hartford Mut. Ins. Co.*, 38 Tenn. App. 482; *Consoli* v. *Commonwealth Ins. Co.*, 97 N. H. 224; *Mitchell* v. *Globe & Republic Ins. Co.*, 150 Pa. Super. Ct. 531; *Spare* v. *Glens Falls Ins. Co.*, 137 Conn. 105.)

The rationale of these cases has been described as the " spatial relationship " (3 B. C. Ind. & Comm. L. R., 15, 23) in that " the insured expects that the process of combustion will take place within certain limits. As long as the fire remains within these limits, the resulting loss cannot be recovered under an insurance policy. When the fire breaks its bonds and extends beyond the place where the insured intended it should burn, the resultant loss is recoverable."

To the contrary " It has been also held, and with good reason, that even though a fire may remain entirely within its proper place it may become hostile if it by accident becomes so excessive as to be beyond control." (Vance, Insurance [3d ed.], 870.) Thus, in *O'Connor* v. *Queens Ins. Co.* (140 Wis. 388) a fire was started by plaintiff's servant in a furnace with material (cannel coal) so highly inflammable as to cause heat and smoke to pass through the registers (although no fire escaped from the furnace) with resulting damage. In affirming judgment for the plaintiff it was said (pp. 394–395): " The foregoing cases, we think, fully show that *Austin* v. *Drew,* 4 Campb. 360, is not authority against plaintiff here. There the fire was under control, not excessive, and suitable and proper for the purpose intended. It was, in the language of the books, a ' friendly ',

and not a ' hostile ' fire. In the case before us the fire was extraordinary and unusual, unsuitable for the purpose intended, and in a measure uncontrollable, besides being inherently dangerous because of the unsuitable material used. Such a fire was, we think, a ' hostile ' fire and within the contemplation of the policy.''

A similar result was reached in *Fiorito* v. *California Ins. Co.* (262 Minn. 340) and *Freeberg Pie Co.* v. *St. Paul Mut. Fire Ins. Co.* (257 Minn. 244). In the latter (*Freeberg*) case a thermostatic control on a baking oven failed to regulate the gas flames causing the oven to melt and burn. In holding that the insured was entitled to recover, the court (p. 251) quoted with approval the following statement by Professor Vance (1 Conn. Bar J., 284, 292) : '' A friendly fire is fire under control; and a fire beyond control is hostile, whether it be in or out of its proper place.''

In the absence of controlling authority in this State, we conclude that these latter decisions express the principle to be followed. Pertinent is the statement in the *Fiorito* case (*supra,* p. 344) where it was written : '' When the nature of present-day heating devices and equipment is borne in mind, it does not seem warranted to encumber the court-made doctrine originally announced in Austin v. Drew (*supra*) with the requirement that there must be some actual ignition or some burning outside the heating device, even though an excessive fire destroys the device itself. An excessive or uncontrolled fire, sufficient to melt parts of a furnace, surely is included in the intended meaning of the words ' loss or damage by fire.' ''

Finally, it is of interest that although much of the law formulated on the subject has been based on the early English case of *Austin* v. *Drew* (*supra*) that decision at a comparatively recent date has been exhaustively examined and severely limited in application in *Harris* v. *Poland, supra,* ([1941] 1 K.B. 462). Therein it appeared that the fire remained within its bounds and at intended intensity. It was held, however, to be immaterial whether the property had gone to the fire or the fire had gone to the property. In either event it was a loss to the insured by fire and recovery should follow.

Judgment should be granted in favor of the plaintiff.

WILLIAMS, P. J., GOLDMAN, HENRY and DEL VECCHIO, JJ., concur.

Submitted controversy unanimously determined in favor of plaintiff and judgment so awarded, without costs.