WARREN E. BOWES, ROBERT M. MOORE, MELVIN W. LONG, S. N. BROACH, TRUSTEES OF WHEELER'S CHURCH v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY

No. 759DC143

(Filed 18 June 1975)

1. **Insurance § 117— fire insurance — hostile or friendly fire**

Even though a fire may be spatially confined to its intended place, if it is extraordinary, or excessive, and unsuitable for the purpose intended, and is in a measure uncontrollable, the fire is "hostile" as distinguished from "friendly" and would be covered under standard form fire insurance policies in this State; whether a spatially confined fire has become excessive within the contemplation of the parties to an insurance policy is for the jury pursuant to proper instructions in the particular case.

Bowes v. Insurance Co.

2. Insurance §§ 117, 136— instructions on hostile fire

In an action to recover under a fire insurance policy for smoke and soot damage to a church from fires in gas heating units in the church, the trial court erred in limiting its definition of hostile fire to the concept of "uncontrollability" since the court should have broadened its definition of hostile fire to include a fire that has become excessive even though it remains spatially confined to its intended place.

APPEAL by plaintiff from *Allen, Judge.* Judgment entered 23 September 1974 in District Court, PERSON County. Heard in the Court of Appeals 16 April 1975.

This action was brought by the trustees of Wheeler's Church against the defendant to recover for fire and smoke damage allegedly covered by a policy of fire insurance issued by the defendant to plaintiff. It is alleged that on or about 7 February 1973, Wheeler's Church was partially damaged by fire resulting in $1,708.59 property damage. Plaintiff filed timely proof of loss with defendant, but defendant refused to pay the loss. Plaintiff filed an alternative claim for relief pursuant to the extended coverage provisions in the policy for smoke damage. Defendant answered denying all pertinent allegations and defended on the grounds that the loss complained of was not such a loss as was covered by the policy. In particular, defendant alleged that the extended coverage provisions were inapplicable since the policy explicitly required heating and cooking units to be vented before coverage would exist, there being no vents on the heating units which caused the damage. Secondly, defendant alleged that the fire which presumably caused the damage in the present case was not a "hostile" fire and absent such a fire, no coverage existed.

Three witnesses testified for the plaintiff that they arrived at the church at approximately the same time to attend a funeral service and that upon entering the church discovered that the sanctuary was filled with smoke. There were four gas burning heating units in the church, each unit being approximately thirty inches high and twenty-four inches wide. These units normally operated by igniting gas emitted from a line of tubes in the bottom of the unit, producing flames which eventually caused a porcelain or asbestos waffle grille assembly above it and part way up the unit to heat to a red glow. They discovered that the flames on two of the units were leaping up over the top of the entire unit. On one the flames were leaping approxi-

mately four inches over the unit and on the other up to two feet above. The witnesses further testified that the flames were coming out of the unit and to the outside of the porcelain grille whereas they normally remain within the unit. After some effort on the part of the witnesses, the units were cut off and the flames went out. The other two units were not working. The man who undertook to repair the church testified that the damage caused by the units was of the nature of smoke and soot.

At the close of the evidence, defendant's motion for directed verdict was allowed as to the claim for relief under the extended coverage provisions, but was denied as to the principal claim for relief. The jury found for the defendant. Plaintiff appealed.

Further facts pertinent to the disposition of this case will be discussed in the opinion.

*Ramsey, Jackson, Hubbard & Galloway, by Mark Galloway, for the plaintiff.*

*Haywood, Denny & Miller, by John C. Martin, for the defendant.*

CLARK, Judge.

The trial court submitted the issue of liability to the jury on the principles of friendly versus hostile fires. Our research of reported opinions discloses that heretofore no previous case has been so submitted to the jury in this State. Therefore, before we review the various assignments of error brought forward in reference to the instructions, we shall discuss the general application and definitional limits of the doctrine.

The friendly fire-hostile fire distinction arose as an interpretative rule to find what was the actual contemplation of the parties to a fire insurance contract wherein the insurer undertook to compensate the insured "against all direct loss by fire." The leading case adopting the distinction was the English case of *Austin v. Drew*, 4 Camp. 360, 171 Eng. Rep. 115 (1815). The issue which the court had to resolve was: Did the parties intend to include within the undertaking of the insurance company any and all losses caused by fire however started and whatever its nature, or did they intend to make a distinction between intentional and accidental fires as the risk being insured against? The court felt that logically, not all fires were intended to result in a recovery against the insurer, so it sought to construe

the policy somewhere between liability in every case and no liability at all. While reports differ as to the precise facts in the case, the test ostensibly arrived at by the court was:

> "When a fire has been intentionally lit, and remains in the place designated to accommodate it, neither the insured, nor the insurer intended to treat losses arising therefrom as fortuitous—unexpected in the normal course of events." Reis, *The Friendly Versus Hostile Fire Dichotomy*, 12 Vill. L. Rev. 109, 115 (1966).

For lack of more appropriate terms, fires within the above category came to be known as friendly; those without, hostile. See *Way v. Abington Mutual Fire Ins. Co.*, 166 Mass. 67, 43 N.E. 1032 (1896). The result of the opinion is that if a fire remains spatially confined to its intended place, *situs*, it is friendly and no liability should have been contemplated by the parties. However, as later cases employing the rule have revealed, the effect in many instances creates substantive results rather than approaching the rule as interpretive in nature. We believe this is indicated by the fact that the *situs* test relies principally upon questions of actual consumption or flame, thereby disregarding in many cases the by-product element of fires such as smoke, soot, light, and heat.

As a more recent case infers, the idea of excessive heat may cause an otherwise spatially confined and therefore friendly fire to be regarded as hostile, particularly when viewed from the standpoint of an insured's policy coverage expectations. See *Barcalo Mfg. Co. v. Firemen's Mut. Ins. Co.*, 24 App. Div. 2d 55, 263 N.Y.S. 2d 807 (1965). While the case is factually distinct from that of the present case, it recognizes that "[a]n excessive or uncontrolled fire, sufficient to melt parts of a furnace, surely is included in the *intended* meaning of the words 'loss or damage by fire.'" 24 App. Div. 2d at 58 (Emphasis added). The word "intended" is emphasized for it is well established that the intention of the parties, having due regard to the situation and character of the property being insured and the natural and necessary uses to which it must be put, are paramount in interpreting the effect of insurance contracts. See *Baum v. Insurance Co.*, 201 N.C. 445, 160 S.E. 473 (1931).

[1] While the majority of the decisions throughout the country have applied the *situs* or confinement test in determining the intention and contemplation of the parties to a fire insurance

policy, it is our opinion that if the size of the fire in terms of heat becomes greater than would be anticipated by the insured and if by excessive heat, damages are caused, then it would be reasonable on the part of an ordinary insured to expect that he would be covered. The question of whether a fire, though spatially confined, has become excessive within the contemplation of the parties to the insurance policy would be properly left to the jury pursuant to proper instructions in any particular case. This accords with fairness and appropriately promotes the idea that, after all, the primary object of all insurance is to *insure*. Even though a fire may be spatially confined to its intended place, if it is extraordinary, or excessive, and unsuitable for the purpose intended, and is in a measure uncontrollable, then the fire is "hostile" as distinguished from "friendly" and is such a fire as would be covered under standard form policies in this State. We note that the principles enunciated above would apply to the situation of the parties in the present case.

[2]  Turning to the questions involved here, the record reveals that the trial court instructed the jury on the hostile-friendly fire distinction as follows:

> "Now, a hostile fire is—a hostile fire means one not confined to the place intended or one not intentionally started, and it is generally considered to refer to such a fire which if it pursued its natural course would have resulted in a total or partial destruction of the insured property.
>
> When a friendly fire escapes from the place it ought to be—place it ought to be to some place where it ought not to be causing damage, it becomes a hostile fire.
>
> A hostile fire is one which becomes uncontrollable or breaks out from where it was intended to be and becomes a hostile element and where this is such a fire, fire recovery may be had for losses or damages caused by smoke and/or soot and/or heat.
>
> Now, I have talked about hostile fire. I guess in order for you to make a decision in your minds between hostile and friendly, I will give you the definition of a friendly fire.
>
> A friendly fire is one which is employed for the ordinary purpose of heating, lighting or manufacturing and it is confined within its usual limits.

If a fire is burned any place where it's intended to burn, if those damages may have occurred where none were intended, it is a friendly fire, and the insuror [*sic*] is not liable for damages flowing therefrom."

The instructions of the trial court omitted entirely the concept of "excessiveness" and limited the definition of "hostile fire" to the concept of "uncontrollability." Since the evidence revealed that once the control valves were closed the fires went out, the jury could conclude from the quoted instructions that the fires were controllable and, therefore, friendly. The trial court should have broadened its definition of a hostile fire to include a fire that has become excessive, even though it remains spatially confined to its intended place. Controllability is not control in the sense that one can put out the fire, but control in the sense that the apparatus producing the flame at the time the damage is occurring is operating within reasonably defined operating limits. If the heat being produced substantially exceeds what one could expect the apparatus to produce, the fire becomes hostile. See generally, Vance, *Friendly Fires*, 1 Conn. B.J. 284 (1927). The broader definition of a hostile fire, with the concept of excessiveness, is a more realistic recognition of the multiple characteristics of a fire and of the risks contemplated and intended to be covered in the fire insurance policy.

For error in the instructions of the trial court, the judgment is vacated and the cause remanded for a

New trial.

Judges MORRIS and VAUGHN concur.