139 N.J. Super. 599 (1976)
354 A.2d 696
PAULINE KARADONTES, PLAINTIFF,
v.
THE CONTINENTAL INSURANCE COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, District Court, Bergen County.
February 17, 1976.
*600 Mr. Jack F. Govan for plaintiff (Mr. Louis Eisenstein, attorney).
Mr. Raymond J. Fleming for defendant (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
TROAST, J.J.D.R.C., Temporarily Assigned.
Plaintiff and defendant have both moved for summary judgment. The issue is whether plaintiff's "Standard Fire Insurance Policy" affords coverage for damage to plaintiff's boiler. There is no dispute as to the facts. Plaintiff's oil-fired, cast iron boiler located in a frame and brick building used for store and dwelling purposes was damaged as the result of a failure or faulty operation of a low-water cut-off valve in the boiler. When the cut-off valve malfunctioned the water level in the boiler dropped below a safe level, the boiler continued to operate without sufficient water and the boiler cracked from excessive heat.
Plaintiff's standard fire insurance policy does not make express provision for the type of loss involved in this case. It refers to the peril insured against as "fire coverage." N.J.S.A. 17:36-5.19, which is concerned with the perils insured against under standard fire insurance policies in this State, provides:
Every such fire insurance policy shall insure, limited to the amounts of insurance specified therein, the named insured and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all direct loss[1] by fire, lightning, and by removal *601 from premises endangered by the perils insured against in such policy, except as thereinafter provided, to the property described therein while located or contained as described in such policy, or pro rata for 5 days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in such policy, but not elsewhere. Every such fire insurance policy shall contain a provision that its assignment shall not be valid except with the written consent of the insurer." (Emphasis added).
Defendant contends that because of the common law distinction between "hostile" and "friendly" fires plaintiff cannot recover. Generally, when a fire burns where it is intended to burn the fire is considered friendly, however, when a fire becomes uncontrollable or breaks out from where it was intended to be it is considered hostile. 45 C.J.S. Insurance § 809. Although there are no cases in this State which are controlling, there are cases in other jurisdictions holding that where a failure or faulty operation of a thermostat or other control device within heating equipment causes excessive heat and results in damage, the loss is covered under a standard fire insurance policy.
In Fiorito v. California Ins. Co., 262 Minn. 340, 114 N.W.2d 661 (Sup. Ct. 1962) when a fire within a furnace burned so excessively and was so uncontrolled that it damaged the inside of the furnace, the court stated:
The doctrine of "friendly" and "hostile" fires has, for many years, been accepted as a judicial addendum to policies of fire insurance. The basic principle is that a "friendly" fire, one which is intentionally kindled for beneficial purposes and which thereafter is confined to the place intended, does not support recovery under insurance against any loss or damage by fire, unless there is some spreading of the flame with injury outside the fire's proper place. This, at least, is the prevailing rule. See 29A Am. Jur., Insurance, § 1287.
*602 In Fiorito the court found that the evidence supported a finding that the fire was a "hostile" fire and stated:
When the nature of present-day heating devices and equipment is borne in mind, it does not seem warranted to encumber the court-made doctrine originally announced in Austin v. Drew [4 Campb. 360], supra, with the requirement that there must be some actual ignition or some burning outside the heating device, even though an excessive fire destroys the device itself. An excessive or uncontrolled fire, sufficient to melt parts of a furnace, surely is included in the intended meaning of the words "loss or damage by fire."
In Barcalo Mfg. Co. v. Firemen's Mut. Ins. Co., 24 A.D.2d 55, 263 N.Y.S.2d 807, 17 A.L.R.3d 1150 (App. Div. 1965), automatic controls on a furnace failed to operate properly and as a result the furnace and forgings being annealed within the furnace were destroyed. The court permitted recovery under a fire insurance policy, holding that this was a direct loss by fire and stated that even though a fire may remain entirely within its proper place, it may become hostile if by accident excessive heat causes damage. Cf. Bowes v. N.C. Farm Bureau Mut. Ins. Co., 26 N.C. App. 234, 215 S.E.2d 855 (Ct. App. 1975).
Defendant has referred the court to several cases in other jurisdictions. However this is not a case where a boiler has overheated due to negligence or mismanagement of the fire within the boiler. See McGraw v. Home Ins. Co., 93 Kan. 482, 144 P. 821 (Sup. Ct. 1914); cf. Wasserman v. Caledonian-American Ins. Co., 326 Mass. 518, 95 N.E.2d 547 (Sup. Jud. Ct. 1950).
Defendant contends that the policy contains an exclusion which precludes liability for this type of loss. The language referred to is as follows:
SECTION VI
This company shall not be liable:
(a) for loss caused by or resulting from power, heating or cooling failure, unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the property covered is located, caused by the peril(s) insured against.
*603 In Bauman v. Royal Indem. Co., 36 N.J. 12 (1961), the court stated: "In all fairness to the ordinary layman who is the average insured, an exclusion clause should be so prominently placed and so clearly phrased that `he who runs can read.'" Language in an insurance policy with a questionable meaning should be liberally construed in favor of the insured. Hunt v. Hospital Service Plan of N.J., 33 N.J. 98 (1960). In that case the court said:
The quest for the significance of language employed in an insurance contract is always engaged in with certain basic tenets in mind. Wherever possible the phraseology must be liberally construed in favor of the insured; if doubtful, uncertain, or ambiguous, or reasonably susceptible of two interpretations, the construction conferring coverage is to be adopted. [at 102]
The object of an exception is to exclude that which otherwise would be included and avoid misinterpretation. However, the language of the exception relied upon by the insurer in this case is obscure and ambiguous. Here there was a loss resulting from a heating failure and the loss was the result of a malfunction of heating equipment located on the insured premises. Comparing the facts to the exception, I find that the language did little to put the purchaser of the policy on notice that the insurer did not intend to insure against this type of loss. On the other hand, the language chosen by the insurer might even have led the insured to believe the policy would provide the coverage in question. In the words of our Supreme Court:
In recent years our courts, stressing the need for clarity and forthrightness in insurance policies (Elcar Mobile Homes Inc. v. D.K. Baxter, Inc., 66 N.J. Super. 478 (App. Div. 1961)) have repeatedly adopted liberal constructions of policy provisions which were obscure, ambiguous or uncertain. [Bauman v. Royal Indem. Co., supra 36 N.J. at 21]
In the present case the court is construing a contract of adhesion and should look to the reasonable expectations of plaintiff as a purchaser of insurance in the light *604 of the contract language. Linden Motors Freight Co. v. Travelers Ins. Co., 40 N.J. 511, 524 (1963). The purpose of the contract was to insure against loss by fire, and if the language reasonably permits such an interpretation, the court should favor a construction effectuating that purpose. Reese Cadillac Corp. v. Glens Falls Ins. Co., 59 N.J. Super. 118, 126 (App. Div. 1960). Consequently, I find that plaintiff is entitled to recover for a direct loss resulting from a fire which accidentally became uncontrolled.
Accordingly, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment denied. Defendant's expert was of the opinion that damage amounted to $2,800, and a judgment will be entered against defendant in that amount.
NOTES
[1] "Direct loss," as used in fire insurance policies, has been construed to have essentially the same meaning as "proximate cause" in negligence cases. Norwich Union Fire Ins. Soc. v. Bd. of Comm'rs, 141 F.2d 600 (5 Cir.1944); 13 Appleman's Insurance Law and Practice, § 7461, page 485.