JOHN S. WAY *vs.* ABINGTON MUTUAL FIRE INSURANCE. COMPANY.

Suffolk.   March 10, 1896. — May 19, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Fire Insurance — Damage caused by Smoke from Soot ignited in Chimney by Fire in Stove and Obstruction of Flue.*

If a fire lighted in a stove by the occupant of the room containing it, for the purposes of his business, ignites the soot accumulated in the flue of the chimney into which the pipe of the stove enters, and the flue becomes obstructed, at a bend therein, by the falling of the lining of the chimney and scales of soot, causing the smoke from the burning soot to escape into the room and damage property therein, such damage is covered by a policy of insurance upon the property against all loss or damage by fire.

CONTRACT, upon a policy of insurance for $1,500, against all loss or damage by fire, on the plaintiff's property in Boston, for one year from August 5, 1891.   Trial in the Superior Court, before *Mason*, C. J., who allowed a bill of exceptions, in substance as follows.

The plaintiff put in evidence the policy declared upon, which was in the Massachusetts standard form, and the proofs of loss made by him to the defendant, which stated that the fire " originated from burning soot, puffing out and filling the rooms where property insured was located with smoke."

The plaintiff also put in evidence the report of an auditor, to whom the case had been referred, which contained the following statements :

" The insured property consisted of cigars manufactured and in process, tobacco and materials and supplies for cigars, in the brick building Nos. 25 to 31 on Doane Street in Boston, in the basement, and two rooms on the first floor.

" On the night of September 25, 1891, the plaintiff's goods were damaged by smoke, caused as hereinafter stated, to the amount of $1,180.65. The plaintiff complied with all the provisions of the policy on his part to be performed. The defendant denied its liability for the loss, immediately after it occurred.

" The damage was caused as follows. About five o'clock P. M. on September 25, 1891, the plaintiff's foreman emptied into the stove in the front room on the first floor the contents of a waste basket, consisting of waste paper, and lighted the same, and in a few moments it was apparently all consumed ; the foreman thereupon closed the drafts of the stove, and left the store locked up at about six o'clock.

" At 7.51 of the same evening an alarm of fire was given by reason of smoke being seen issuing from under the front door of the building and through the keyhole of the same door. The door was burst open, and the two rooms and basement were found to be full of a dense smoke, as also the other and upper rooms of the building. The smoke was very thick, and apparently came down the chimney into the front room.

" An examination of the flue of the chimney into which the pipe of the stove in the front room entered showed that the soot in that flue had been recently on fire, and that the flue was choked up by nearly a bushel of lime and scales of burnt soot.

" There was a large amount of burnt soot in the flue, below the obstruction above named, and the burning waste paper above mentioned ignited the soot in the flue, and the soot thus burning caused the plaster lining of the flue and the scales of

soot to fall and choke up the flue at a bend therein, about on the level of the second floor, and the smoke caused by the soot continuing to burn in the flue at a point below said obstruction came out into the plaintiff's rooms, and caused the damage to the plaintiff's goods.

" There was no fire in the building other than in the stove and chimney, and all of the smoke came from the chimney and was caused as above stated, and the soot in the chimney was accidentally ignited by the burning waste paper placed in the stove in the front room, and such ignition of the soot was not the intended nor the probable result of so burning such paper, and the paper was placed in the stove and ignited for the purposes and as a part of the plaintiff's business of manufacturing cigars.

" The defendant contended that, as the above facts show there was no fire in either of the plaintiff's rooms except in the stove and chimney, which were where both parties to the contract of insurance contemplated there should be a fire, there was no loss by fire within the meaning of the contract, and requested me to rule, as matter of law, that this action could not be maintained.

" I decline to so rule, but do rule that, although the fire was confined in places constructed or maintained for holding and conducting fire and the products of combustion under ordinary intended conditions, it was still not such a fire as the places and appliances were intended for, and neither the fire nor the damage was caused by any misuse or mismanagement of such appliances, but the fire was accidental and in a place where the plaintiff did not intend to maintain it, and that it was the proximate cause of the damage; that the chimney was not made or maintained for the purpose of maintaining fires therein, but for the purpose of conducting the products of combustion to the outside of the building, which in this case it failed to do by reason of the soot being so ignited and burnt, thereby causing the obstruction which forced the products of such fire into the rooms of the building and caused the damage "; and the auditor found for the plaintiff.   The plaintiff introduced no other evidence.

The defendant's counsel, in his opening to the jury, stated, among other things, that the jury had a right, in determining questions of fact submitted to them, to use their common experience and the general knowledge which they had acquired in

the course of their lives; that it is common knowledge that, when fireplaces and stoves connected with an ordinary chimney are used in the usual way for maintaining fires, the soot from such fires collects in the chimney, and, unless cleaned out, accumulates there; that the soot is liable to be ignited by the fires maintained in the ordinary way in the stove or fireplace, and, when so ignited, to burn; that the chimneys are constructed with the knowledge and expectation that soot so collecting will from time to time be ignited and will burn, and that the chimneys are constructed and intended for such soot so to burn in them, and to carry off the products of such combustion; that when people kindle fires in the stoves and fireplaces, they do it with knowledge that the soot collected in the chimneys is liable to take fire and to burn; that the stoves and chimneys are intended and maintained as receptacles for maintaining fires, and for carrying off the products of combustion; and that fires, while confined within those receptacles, are not such fires as, within the contemplation of the parties, the insured is to be protected from by his contract of insurance.

The defendant then called as a witness Jerome C. Hosmer, who testified that his business was that of a builder, and had been such for forty years; that he had examined the chimney on the plaintiff's premises; that the flue connected with the plaintiff's stove rises to the second floor, and then bends a little to the left, and at the third floor takes another bend; that it is a flue of ordinary construction; that, up to the year 1891, the usual and ordinary way of constructing chimneys was to line them with plaster; and that the building law of the city of Boston required them to be plastered. The defendant then put to the witness the following questions:

" 1. When fires are maintained in fireplaces and stoves connected with flues, is it an ordinary result that the soot collected in the flue is from time to time set on fire by the flame and sparks from the fire?

" 2. In such flues as this one that you saw in Doane Street, when fires are maintained in the stove connected with it by a stove-pipe, is it a usual and ordinary effect of maintaining those fires to produce a collection of soot in the flue, which remains there if it is not cleaned out?

" 3. Is it the usual common experience that soot so remaining in the flue is from time to time set on fire, ignited by the sparks and flame of the fires maintained in the stove or fireplace in the usual and ordinary way?

" 4. Whether flues are constructed for the purpose of carrying off the consequences of the ignition in the flue of soot which may be collected there from the fires maintained in the ordinary way in the fireplace, and which ignition follows from the maintenance of such a common fire in the stove ?

" 5. Whether it is anticipated by builders, in constructing chimneys, that the ordinary fires maintained in stoves or fireplaces connected with them will from time to time ignite soot collected from those fires in the chimney, and whether the chimneys are built and intended by the builders to meet that result and carry off the consequences of it, without injury, outside of the roof ? "

The judge, upon the plaintiff's objection, excluded the evidence ; and the defendant excepted.   The defendant introduced no other evidence, and requested the judge to instruct the jury as follows:

" 1.  On all the evidence, the plaintiff cannot recover.

" 2.  Under the defendant's policy of insurance, so long as the fire is confined within the limits of the appliances or instrumentalities on the plaintiff's premises intended for holding and carrying off the fire and its effects, the defendant is not liable for damage caused by the smoke of a fire so confined.

" 3.  Under the defendant's policy of insurance, the defendant is not liable for damage caused by the smoke of a fire, unless the fire escaped from the confinement of the appliances or instrumentalities on the plaintiff's premises, which were intended to hold it and carry it off with its effects.

" 4.  If the plaintiff's chimney was an ordinary chimney, and was constructed and connected with the stove in the common and ordinary way, and the chimney was intended to carry off the smoke and flame of the fires kindled in the stove, and if the common and ordinary effect of maintaining fires in the stove was to create soot in the chimney, and if it is a common and ordinary consequence of lighting a fire in a stove connected with a chimney constructed in the usual way to set the soot in

the chimney on fire with more or less frequency, and it was to be expected in the use for a fire in the usual way of the plaintiff's stove and chimney that the soot in the chimney would or might, from time to time, be set on fire, then the defendant is not liable for damage caused by smoke from soot set on fire and burning in the stove or chimney so long as the burning soot and fire were confined within the stove and chimney, and did not escape from that confinement.

" 5. If the plaintiff's goods were damaged only by smoke escaping into his rooms from soot burning in his chimney, and the cause of the smoke's thus escaping into his rooms was an obstruction in his chimney above the burning soot, which prevented the smoke of the burning soot from ascending and passing upwards in the usual way, and the way intended, into the outer air, and if the fire did not escape from the confinement of the chimney, the defendant is not liable, and the plaintiff cannot recover.

" 6. If the plaintiff's goods were damaged only by smoke escaping into his rooms from soot burning in his chimney, and the smoke was caused to escape into his rooms by the lining of the chimney and scales of soot falling and choking the chimney above the burning soot, thus preventing the smoke of the burning soot from ascending and passing upwards through the chimney in the usual way, and the way intended, into the outer air, and if the fire did not escape from the confinement of the chimney, the defendant is not liable, and the plaintiff cannot recover.

" 7. If the fire producing the smoke which damaged the plaintiff's goods was confined to the stove and chimney, and did not escape therefrom, and the damage was caused by the lining of the chimney and scales of soot falling and choking the chimney, whereby the smoke was prevented from escaping by the chimney, and was forced into the room where the goods were, and this was the sole cause of damage to the goods from the soot burning in the chimney, the plaintiff cannot recover."

The judge indorsed upon the above requests the following : " First is refused, the others are dealt with only by implication in the general ruling " ; and the defendant excepted.

The judge then instructed the jury as follows : " The auditor's

report which has been read before you has not been controlled by any evidence. The evidence offered has been excluded, and right of the parties saved under that exclusion, and upon the view which the court takes of the law upon the facts as they are now submitted to you, the plaintiff is entitled to recover, and there is no controversy as to the amount. The verdict has been prepared for your signature, and you will accordingly return a verdict for the plaintiff to that amount." The defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*L. S. Dabney,* for the defendant.

*A. Hemenway,* (*W. H. Preble* with him,) for the plaintiff.

KNOWLTON, J. It is conceded by the defendant that it is liable for damage caused by smoke to the same extent as if the damage had been caused directly by the fire which produced the smoke. The question before us is whether the fire in the chimney was within the contract of insurance made by the defendant. The policy purports to cover all loss or damage by fire, but the defendant contends that in all such contracts there is an implied exception of such fires as this from which the plaintiff suffered loss.

The facts are not in dispute, and if the defendant's witness had been permitted to testify as an expert, or if the jury had used their common experience and common knowledge to find the facts as the defendant's counsel in his opening contended that they should be found, there would have been no substantial conflict between the statement of the auditor and the facts relied upon by the defendant.

A chimney is not intended to be used as a place in which to kindle fires, or to have fires for use or enjoyment in connection with the occupation of a building. It is intended to carry off the products of combustion. One of the products of combustion in a stove or fireplace connected with a chimney is soot, which will accumulate more or less in the chimney, and will sometimes take fire from the flame in the stove or fireplace. Chimneys are constructed with a view to guard against accidents when such fires occur. Occasional fires in a chimney from the ignition of soot are to be expected. Such fires are

not desired. They are not maintained for any useful purpose. In a sense they are accidental, for they are not lighted intentionally, but they start from time to time without human agency when a large quantity of soot has accumulated and the circumstances chance to be favorable to ignition from the fire which is maintained in the place intended for it.

The defendant's counsel contends that the policy was not intended to apply to a fire which is lighted and maintained for the ordinary purposes for which fires are used in buildings, and which is confined within the place that is fitted for such fires. He argues that, if a stove should be cracked and spoiled by a fire kindled in it to warm the house, or if a fire in a fireplace should crack the mantel, or scorch valuable furniture left too near it, or injure property by its smoke which the chimney failed to carry off, or if a lamp should throw off soot or smoke in such quantities as to cause damage to property, in every such case, if the fire burned nothing but that which was intended to be burned for a useful purpose in connection with the occupation of the house, and if it did not pass beyond the limits assigned for it, the insurance company would not be liable. See *Austin* v. *Drew*, 4 Camp. 360; *S. C.* Holt, N. P. 126; 6 Taunt. 436, 438; *American Towing Co.* v. *German Ins. Co.* 74 Md. 25; *Scripture* v. *Lowell Ins. Co.* 10 Cush. 356. We are not disposed to question the soundness of the general principle on which this contention is founded, and we find it by no means easy to determine whether the principle should be extended far enough to cover an occasional fire in a chimney incidental to the ordinary use of a stove, or whether such a fire should be held to be one for whose unexpected injurious consequences an insurance company should be liable. We are inclined to the opinion that a distinction should be made between a fire intentionally lighted and maintained for a useful purpose in connection with the occupation of a building and a fire which starts from such a fire without human agency in a place where fires are never lighted nor maintained, although such ignition may naturally be expected to occur occasionally as an incident to the maintenance of necessary fires, and although the place where it occurs is constructed with a view to prevent damage from such ignition. A fire in a chimney should be considered rather a hostile fire

than a friendly fire, and as such, if it causes damage, it is within the provisions of ordinary contracts of fire insurance.

It is doubtless true that in former years in some parts of the country straw and other combustible materials have sometimes been put in chimneys and set on fire to burn out the soot. But neither at the trial of this case before the jury nor in the argument before us was there any suggestion that such a practice prevails or has ever prevailed in Boston, or that this chimney was constructed with a view to kindling fires in it for such a purpose. What our decision would be if damage was done by smoke from a fire in a chimney intentionally kindled to burn out the soot, it is unnecessary now to determine.

It is also to be noted that there was an accidental obstruction of the flue by the falling of the plaster lining of the chimney, which in some aspects of the case might be deemed an important fact in favor of the plaintiff's claim.

*Exceptions overruled.*