E. C. ZAMBONI AND OTHERS v. IMPLEMENT DEALERS
MUTUAL FIRE INSURANCE COMPANY.[1]

March 16, 1928.

No. 26,502.

**Loss caused by explosion was not recoverable under defendant's policy.**
    The evidence is conclusive that the explosion in a gasolene filling
    station was caused by an innocent or friendly flame or fire and was
    not an incident of a precedent hostile fire; hence the loss caused by
    the explosion was not recoverable under the fire insurance policy sued
    on which excepts loss or damage caused by explosions of any kind,
    unless fire ensues, and then covers the loss or damage caused by fire
    only.

Fire Insurance, 26 C. J. p. 345 n. 13.

---

See note in 38 L.R.A.(N.S.) 474.
See note in 13 A. L. R. 883; 44 A. L. R. 870; 14 R. C. L. 1218, et seq.;
·   3 R. C. L. Supp. 359; 4 R. C. L. Supp. 947.

Action in the district court for Steele county, tried before Peter-
son, J. of the tenth judicial district acting for the judge of the
fifth judicial district, to recover upon a policy of fire insurance.
There was a verdict of $587.50 for plaintiffs. They moved for a
new trial upon the ground of insufficient damages. The motion was
denied. Afterwards defendant moved for judgment in plaintiffs'
favor for $350 notwithstanding the verdict. The motion was grant-
ed. From the judgment entered pursuant thereto, plaintiffs ap-
pealed. Affirmed.

*Sawyer, Gausewitz & Lord* and *Brown, Somsen & Sawyer,* for
appellants.

*Oscar Hallam* and *Charles G. Wright,* for respondent.

HOLT, J.
Plaintiffs appeal from a judgment entered in their favor for $350
upon defendant's motion, after a verdict for $587.50. Plaintiffs

[1]Reported in 218 N. W. 457.

moved for a new trial because of the inadequacy of the verdict. The motion was denied, while defendant's motion for judgment non obstante was granted.

The action is upon a policy issued by defendant insuring plaintiffs against loss or damage by fire of a filling station in Owatonna, but "not to include loss or damage caused by explosions of any kind and unless fire ensues, and then to include that caused by fire only." It is conceded that $350 covers the loss and damage caused by fire only. There was also an explosion which bulged out the brick walls of the station and necessitated a rebuilding of the same, at least in part. The extent of the loss or damage caused by the explosion alone is in dispute. If the evidence warranted a recovery for the explosion, the verdict rendered was inadequate. The controversy between the parties appears to be whether the explosion was caused by a hostile or by a friendly fire as those terms are understood in the insurance law. Or, in other words, if the explosion followed as an incident of a hostile or involuntary fire, the defendant concedes it was not entitled to judgment non obstante. So that the question on this appeal reduces itself to this: Was the evidence so conclusive that the explosion resulted from an innocent or friendly fire as to preclude a jury from finding otherwise? For the purposes of this decision we shall assume that the court stated the law correctly when the jury were told that the burden was on defendant to prove that it was not liable for the damages caused by the explosion.

The filling station was the ordinary filling station, equipped as such with office and toilets in the building. It was one story and basement. In the basement were two gasolene tanks of 550 gallons each, also an automatic "compressor" operated by electricity. The time of the accident was a still, warm, and muggy August morning just before 12 o'clock. The driver of a gasolene tank truck was in the act of filling the basement tanks through a tube into a funnel set in a pipe just outside the wall which led into the basement tanks. The attendant of the station had sold gasolene to three strangers who drove up in an automobile, one of whom, Doherty, evidently entered the building for some purpose. The attendant

stepped into the building for change and gave it to the one outside who had bought gasolene. As they were so standing talking there was an explosion within the building, and immediately Doherty came running out with his clothes in flames. He was caught and thrown down by the attendant and the fire in his clothes put out. He died from his burns and no evidence as to his experience was obtained. No smoke or fire was visible before the explosion, nor did any blaze or flame survive it. No effect of the explosion was visible in the basement. Only the upper part of the stairway opening showed scorching. The woodwork in the rooms above the basement was more or less scorched. This scorching was evidently the result of the flame of the explosion which was not strong enough to set the woodwork on fire.

The fire marshal, who was a block away when the explosion took place, saw no fire when he entered the building. He estimated the time to be less than three minutes between the explosion and his entrance. A doctor, who observed Doherty run out of the door afire and called on the attendant to catch and throw him down, testified that he entered the building a matter of a few seconds after the explosion and saw no evidence of fire except smoke from some rags in a corner near the stairway. Persons both from the north and south side were looking at the building when the explosion took place and the attendant was a few feet from the southeast angle thereof, but none of these observed any fire or smoke prior to the explosion. From the fact that there were no effects of an explosion discoverable in the basement, it is clear that the jury could not be permitted to there find a hostile fire which might have caused the explosion. The only explanation of the occurrence is that gasolene vapor drifted in from an open window near where the gasolene truck was discharging the fluid, and that Doherty, the only person inside, attempted to light a cigarette with a match. This would be an innocent or friendly flame or fire and an explosion resulting therefrom would not be covered by the policy in question. The record demonstrates that there was no room for finding any other cause for the explosion. By the judge's certificate this occurred at the trial and is incorporated in the settled case.

"Mr. Abbott Sawyer, in opening the case to the jury, laid stress on the fact that Doherty was addicted to cigarette smoking; that he was a 'cigarette fiend' and that it was through and because of his smoking that the explosion and fire occurred. It was Mr. Sawyer's contention that the smoking of Doherty caused a hostile fire and that the insurance company should pay both explosion and fire damage.

"Judge Hallam, in his opening statement to the jury, announced in court that he conceded that Doherty was smoking either when he went in the filling station or after he got in there and the case was tried upon the theory that Doherty was a cigarette smoker and was in the act of smoking a cigarette while in the filling station."

It is thus seen that the attorneys on both sides conceded that the fire or flame was in the first instance friendly or innocent, originating with Doherty. It is impossible to suggest any practical theory by which that flame was converted into a hostile fire before the explosion. Doherty was in the filling station a very short time. A cigarette stump or lighted match-end tossed toward the rags in the corner would not have had time to smolder into a flame before this explosion occurred; and, what is more, had a flame thus developed, there would have been little or nothing left of the rags. Again, because a broken flask like a whisky bottle was found just outside a toilet door in the building, it is contended the jury could find that Doherty had spilled some liquor on his clothing and when he attempted to light a cigarette a spark from the match or its flame set fire to his clothes—a hostile fire which caused the explosion. This is too speculative. There is no evidence that the flask contained liquor or that it had been in Doherty's hands. An expert testified, to what is common knowledge, that striking a match so as to produce a flame will at once explode a proper mixture of air and vaporized gasolene, and that the explosion in question was undoubtedly an explosion of such a mixture.

All the cases which plaintiffs cite in which there was held to be a question for the jury, to the effect that the burden

of proof was on the insurer to show that the damage due to the explosion was not incident to hostile fire, have evidence of some fire burning some appreciable time before the explosion, which fire could not be said to be innocent or friendly. Western Assur. Co. v. J. H. Mohlman Co. (C. C. A.) 83 F. 811, 40 L. R. A. 561; Rossini v. Security Mut. Fire Ins. Co. 46 Cal. App. 675, 189 P. 810; German-Am. Ins. Co. v. Hyman, 42 Colo. 156, 94 P. 27, 16 L.R.A.(N.S.) 77; New Hampshire Fire Ins. Co. v. Rupard, 187 Ky. 671, 220 S. W. 538; Stephens v. Fire Assn. of Philadelphia, 139 Mo. App. 369, 123 S. W. 63. To these we may add Mitchell v. Potomac Ins. Co. 183 U. S. 42, 22 S. Ct. 22, 46 L. ed. 74; Githens v. Great American Ins. Co. 201 Iowa, 266, 207 N. W. 243, 44 A. L. R. 863; and Wheeler v. Phenix Ins. Co. 203 N. Y. 283, 96 N. E. 452, 38 L.R.A.(N.S.) 474, Ann. Cas. 1913A, 1297, where in a dust explosion of a large elevator with no resulting fire the court held the evidence of dense smoke and of finding in the débris charred pieces of wood of which a closet was constructed was enough to go to the jury to determine whether or not there was a hostile fire in the closet preceding and to which the explosion was an incident. Also Hall & Hawkins v. Nat. Fire Ins. Co. 115 Tenn. 513, 92 S. W. 402, 112 A. S. R. 870, 5 Ann. Cas. 777.

We think there was no room for a jury to find that a hostile fire preceded the explosion, so that the explosion could be said to be an incident of the fire. There was no error in denying plaintiffs' motion or in granting defendant's.

Judgment affirmed.