FREED'S, INCORPORATED, *v.* AMERICAN HOME FIRE ASSURANCE CO. ·

1. INSURANCE—FIRES—SMOKE DAMAGE—CONSTRUCTION OF POLICY.
Recovery of loss due solely to smoke from kerosene heating stove caused by wind backing up pressure through uncovered stove pipe whereby doors of stove were forced open, flames flared out momentarily and smoke was projected into interior of store building causing $964.02 damage to store merchandise under policy insuring against all direct loss and damage by fire was not precluded by provisions defining smoke damage which excluded smoke from stoves, fireplaces or industrial apparatus.

2. SAME—FIRE LOSS—PROXIMATE CAUSE.
Under a fire insurance policy, loss by fire covers every loss, damage, or injury to the insured property of which fire is the proximate cause and includes every loss necessarily following from the occurrence of a fire although the fire may not have extended to the particular articles insured.

3. SAME—FIRE POLICY—INCREASE OF HAZARD—WAIVER.
Installation of kerosene heating stove with oil tank attached near front of store containing ladies' ready-to-wear merchandise with 6-inch horizontal stove pipe extending some 50 to 65 feet to back of store and through hole in transom over rear door without covering exit of pipe constituted an increase of hazard relieving insurer under fire insurance policy where insurer is not shown to have waived such increase although its agent had knowledge of condition.

Appeal from Wayne; Miller (Guy A.), J.  Submitted January 15, 1943.  (Docket No. 37, Calendar No. 42,177.)  Decided April 6, 1943.

Assumpsit by Freed's, Incorporated, against American Home Fire Assurance Company on a fire

insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Herbert J. Pevos,* for plaintiff.

*Walters & Head,* for defendant.·

Starr, J. Plaintiff appeals from a judgment for defendant, rendered by the trial court sitting without a jury.

On January 9, 1940, defendant company issued to plaintiff, Michigan uniform standard fire insurance policy with "extended coverage indorsement." The policy insured the "ladies' ready-to-wear" merchandise and other personal property located in plaintiff's store in Hamtramck, for a period of one year in the amount of $1,750. Plaintiff paid a premium of $16.63 for the standard policy, and an additional premium of $4.90 for the extended coverage indorsement. The policy and indorsement, which were countersigned by "Daniel L. Tickton Agency, Inc., D. L. Tickton, Agent," provided, in part:

"American Home Fire Assurance Company (defendant) * * * does insure Freed's, Inc. (plaintiff), * * * to the extent of the actual cash value * * * of the property at the time of loss or damage, * * * against all direct loss and damage *by fire.*"

The extended coverage indorsement, referred to as the supplemental contract, provided, in part:

"The coverage of this policy is extended to include direct loss or damage by windstorm, cyclone, tornado and hail, *explosion,* riot, * * * *smoke.* * * *

"In the application of the stipulations, limitations and conditions of this policy, including riders and

indorsements (but not this indorsement), to the perils covered by this extended coverage indorsement, wherever the word 'fire' appears there shall be substituted therefor the peril involved or the loss caused thereby, as the case requires. * * *

"Stipulations, limitations and conditions applicable to smoke: *The term 'smoke'* as used in this indorsement means only smoke due to a sudden, unusual, and faulty operation of any stationary steam, hot water or hot air plant pertaining solely to the service of the building, while contained in or on the premises owned or occupied by the insured and described in this policy, *but not smoke from stoves,* fireplaces or industrial apparatus."

The provisions printed on the back of the policy and "made a part" thereof stated, in part:

"Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage occurring. * * *

"Increase of hazard. (b) while the hazard is *increased by any means within the control or knowledge of the insured;* * * *

"Explosions, lightning. (g) by explosion or lightning unless fire ensue, and, in that event, for loss or *damage by fire only.*"

On December 28, 1940, an explosion occurred in a kerosene heating stove which plaintiff had installed and was operating in its store. There was no fire damage, but smoke caused damage to property insured, in the agreed amount of $964.02. On April 15, 1941, plaintiff began suit to recover such amount. Defendant answered, denying plaintiff's right, under the terms of the policy and indorsement, to recover for damage by smoke. Defendant alleged as a special defense that plaintiff had increased the "hazard" by placing and operating a kerosene heating stove in its store and, under the

above-quoted provision of the policy, could not recover. In his opinion the trial court said:

"I believe that the testimony establishes that there was a sudden and unusual combustion within the oil stove upon these premises which produced a sound described by the witnesses as an explosion. I think the testimony fairly establishes that this sudden and unusual combustion inside the stove was of sufficient force to cause the doors of the stove to open and to cause flames to flare out from the door momentarily to a perceptible extent, and that as a result of such flaring of flame and the unusual event of combustion within the stove smoke was projected into the interior of this store building. I think the testimony fairly establishes that this smoke thus produced was what caused the damage to the plaintiff's stock of goods.

"Unless there is something else in the case which would operate as a defense, therefore, a judgment should go in favor of the plaintiff. * * *

"Among the conditions which are in that way (printed on back) made a part of the policy is the following:

" 'Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage occurring * * * (b) while the hazard is increased by any means within the control or knowledge of the insured.'

"I think it is clear, under the circumstances of the case, *that the use of kerosene for heating these premises amounted to an increase of the hazard upon the premises.* It is claimed that the effect of this increase of hazard is obviated by waiver arising from the fact that the agent who issued the policy knew of the conditions existing upon the premises. * * *

"It is not perceived how as a matter of law the doctrine of waiver can operate to change the terms and provisions of a contract which is already in

force and effect between the parties. If the written stipulations in the contract are to be altered by something which takes place after its execution and after it goes into effect, that change must be made in such a way as to amount to a change in the stipulations and provisions of the contract itself. This contract (policy) provides that the agreements contained therein may be changed only in writing by an agent authorized to make such change. There is no evidence of any change in its provisions by any written subsequent agreement.

"For the reasons last above stated, it must be held that, although the loss which occurred is a loss which is compensable under the terms of the policy as written, that plaintiff cannot recover in this case for the reason that an increase of the fire hazard was made without notification to the insurer and an opportunity given to the insurer to cover such change by modification of the contract and the exaction of an increased premium for the increased risk."

Judgment for defendant was entered October 15, 1941. Plaintiff's motion to vacate the judgment and for a new trial was denied, and it appeals.

The record shows that plaintiff had leased and occupied the store for several years; that when the heating plant in the building broke down and ceased to function in the fall of 1940, plaintiff and other tenants in the building installed their own heating devices. In November, 1940, plaintiff placed a kerosene heating stove, with oil tank attached, near the front of its store and used and operated such stove until the explosion occurred. A stovepipe about six inches in diameter, extending vertically from the stove, turned and extended horizontally 50 to 65 feet to the back of the store and through a hole in the transom over the rear door. The end of such stovepipe was about even with the exterior of the rear

wall of the building. . Police officers and firemen who investigated the explosion testified, in substance, that the exit end of the pipe was not protected; and that the explosion was caused by the wind's backing up the fumes and smoke in the pipe. A police officer who was a member of the arson squad testified:

"There was not any kind of a cover on the (exit) end of this pipe. I observed the directions of the wind. * * * In my judgment, the wind was blowing from the northeast direction. I told him when we got to the outside, I said, 'Mr. Freedman, (secretary and treasurer of plaintiff) here is where your trouble lies. Whoever installed it should have placed a canopy so the wind as it is blowing today would not back up the smoke and the fumes from your oil burner.' "

Notwithstanding the provisions of the extended coverage indorsement and the provisions printed on the back of the policy regarding damage by explosion and smoke, plaintiff could recover for smoke damage under the provision in the policy insuring "against all direct loss and damage by fire," unless it was barred from recovery by other terms of the policy. In *Brady* v. *Northwestern Insurance Co.,* 11 Mich. 425, this court said, in interpreting a policy of insurance "against loss by fire," p. 445:

"The fair and reasonable interpretation of a policy of insurance against loss by fire, will include within the obligation of the insurer, every loss which necessarily follows from the occurrence of the fire, to the amount. of the actual injury to the subject of the risk, whenever that injury arises directly and immediately from the peril, or necessarily from incidental and surrounding circumstances the operation and influence of which could not be avoided."

Section 2779, 4 Joyce on Insurance (2d Ed.), p. 4720, states:

"Whatever may be held to be the meaning of the word 'fire' in any particular case before the court, losses by fire will cover every loss, damage, or injury to the insured property of which 'fire' is the proximate cause. It includes every loss necessarily following from the occurrence of a fire. * * * The fire may not extend to the particular articles insured; they may be shriveled, cracked, or discolored by intense heat, the effect of an actual fire, or *damaged by smoke.* * * * This rule is clearly deducible from and well settled by the cases, and the principles involved run through the opinions of the courts and a long line of decisions."

See, also, *Way* v. *Abington Mutual Fire Insurance Co.,* 166 Mass. 67 (43 N. E. 1032; 32 L. R. A. 608, 55 Am. St. Rep. 379); 1 Clement on Fire Insurance as a Valid Contract, p. 86; 1 Wood on Fire Insurance, § 104, p. 238.

Plaintiff contends there was no evidence showing that the operation of the kerosene oil stove increased the hazard within the meaning of the above-quoted "increase of hazard" provision of the policy. In *Spinner* v. *Concordia Mutual Fire Insurance Co.,* 264 Mich. 388, we considered the same "increase of hazard" provision that is involved in the present case. In the majority opinion Mr. Justice NORTH said:

"Appellant asserts that a question of fact is presented. Appellant's statement of facts contains the following:

" 'At the time of the fire there was a dance being held in the barn attended by a company of persons, some of whom were smoking. * * * Dances had been held in the barn other Saturday nights quite regularly. When cold weather set in *a stove* was installed. There was a hot dog stand with *an oil stove* and a cigar stand where cigars and cigarettes were sold. A false ceiling (of building paper) was

put in the barn and it was lighted with gas lamps.'

"In the face of these and other undisputed facts a finding by a jury that the fire hazard had not been increased would necessarily be set aside as contravening the testimony. The trial judge was right in holding as a matter of law that plaintiff's tenant had *increased the fire hazard.*"

We are satisfied that there was ample testimony in the present case, when considered in connection with the facts and circumstances surrounding the installation and operation of the kerosene stove and the explosion, to justify the trial court in concluding that plaintiff had increased the "hazard" and could not recover.

The factual situation involved in the case of *Castner* v. *Farmers' Mutual Fire Insurance Co.,* 50 Mich. 273, cited by plaintiff, clearly distinguishes it from the case at hand.

We agree with the trial court that the testimony did not establish a waiver by defendant company of the above-quoted "increase of hazard" provision of the policy.

The judgment for defendant is affirmed, with costs.

CHANDLER, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with STARR, J. BOYLES, C. J., and NORTH, J., concurred in the result.