## L. L. FREEBERG PIE COMPANY v. ST. PAUL MUTUAL INSURANCE COMPANY.

100 N. W. (2d) 753.

January 29, 1960—No. 37,799.

*James E. Finley,* for appellant.
*George A. French,* for respondent.

MAGNEY, COMMISSIONER.

Plaintiff, L. L. Freeberg Pie Company, is engaged in the wholesale pie business in St. Paul. Defendant, St. Paul Mutual Insurance Company, had issued to plaintiff a Minnesota standard fire insurance policy insuring the furnishings, fixtures, and equipment owned and used by plaintiff in the baking business. Plaintiff was a tenant. In the early morning of April 11, 1956, the thermostatic control on a bake oven failed, and, as a result, the flame inside the gas-fired oven continued to build up to such a degree as to warp and damage the oven to the extent of $2,016.80. Plaintiff claims that the loss or damage was covered by the insurance policy in force. Defendant contends that the "fire" in question was not one within the contemplation of the contract of in-

surance. The trial court so held, and plaintiff appeals from the judgment entered against it.

As a result of the failure of the thermostatic control the flame continued to burn to its full limit, causing intense heat. When the situation was discovered, the oven was red hot and the room was full of smoke. The smoke was coming from the hardwood floor in front of and underneath the oven. The floor was charred through in two places, each the size of a hand. The fire in the floor boards was not an open flame but a smoldering fire. When the firemen arrived they chopped the charred floor away and soaked the area thoroughly with hand extinguishers. Thirty square feet of flooring had to be replaced. The captain of the engine company which responded to the alarm estimated the damage to the place from smoke and charring at $100 while an adjuster set the damage at $800.

The court found that the flame which burned, melted, and warped the inside of the oven and the baking equipment therein was a normal gas flame and that plaintiff sustained no loss or damage by fire within the meaning of the term "loss or damage by fire," as such term is used in the policy.

The court in its memorandum defined the issue to be whether the damage to the oven resulted from a "friendly" fire, where there could be no recovery, or a "hostile" fire, where recovery would be permitted. In its opinion the fire in question was a "friendly" fire and therefore there could be no recovery.

The fire in the oven originated as a "friendly" fire. During the night the oven was kept heated at 200 degrees so as to heat and dry baking pans, while during the day the baking temperature was kept at 510 to 520 degrees. When the thermostatic control failed to function, the high flame continued on high, uncontrolled, creating such an intense heat as to seriously damage the oven and the baking equipment it contained. To what degree the heat rose is not known, but it exceeded 650 degrees, the highest the dial registered.

The heat from the uncontrolled, excessive flame became of such intensity as to cause a smoldering fire in the hardwood floor in front of and underneath the oven. It is true that the flames from the oven

did not reach the floor, but the heat created by these flames caused the burning in the floor. The smoke which filled the room did not come from the oven but from the smoldering fire that charred the hardwood floor clear through. If the landlord sought to collect on his insurance policy, if he had one, for his loss from fire and smoke, could the insurance company successfully contest the claim on the ground that the fire in the oven was a "friendly" fire? The uncontrolled flame in the oven did the damage to both the interior of the oven and the floor outside of it. When the firemen chopped away the floor and soaked the area with a hand extinguisher, they were not extinguishing heat but a burning.

The policy here involved insured the furnishings, fixtures, and equipment "against all loss or damage by fire originating from any cause except invasion or any military or usurped power whatever." From the wording of the policy itself, plaintiff sustained a fire loss which was insured rather than excluded by the terms of defendant's insurance policy. The courts, however, have created and developed another exception in addition to the ones expressly set out in the policies, namely, that in order to recover for a fire loss the fire which caused the damage must have been a "hostile" fire and not a "friendly" one. Defendant invokes this court-made exception and claims that the fire in plaintiff's oven was a "friendly" fire and that, under the decisions of the courts, there can be no recovery.

The origin of this exception goes back to Austin v. Drew, 4 Campb. 360 (1815). The policy in that case covered a 7- or 8-story sugar-manufacturing building. On the ground floor were pans for boiling the sugar and a stove, with a chimney or flue which extended to the top of the building. There were registers on each floor whereby the heat could be circulated. One morning a fire was started in the stove as usual, but an employee neglected to open the closed register on the top floor so that the smoke and heat could not go up and out of the chimney but were forced into the rooms and damaged the sugar of the insured. The register finally was opened and the smoke and heat were released. Lord Chief Justice Gibbs told the jury that the action could not be maintained, stating (4 Campb. 361):

"* * * There was no more fire than always exists when the manufacture is going on. Nothing was consumed by fire. * * * The sugars were chiefly damaged by the heat; and what produced that heat? Not any fire against which the Company insures, but the fire for heating the pans, which continued all the time to burn without any excess. * * *

          *    *    *    *    *

"* * * there was no fire except in the stove and the flue, as there ought to have been, and the loss was occasioned by the confinement of heat. Had the fire been brought out of the flue, and any thing had been burnt, the Company would have been liable. But can this be said, where the fire never was at all excessive, and was always confined within its proper limits? This is not a fire within the meaning of the policy, * * *."

The chief justice did not give a name to the fire which he described, but later courts called it a "friendly" fire, not covered by a policy of insurance.

The rule which has been evolved is stated in 29 Am. Jur., Insurance, § 1016, as follows:

"A distinction is usually drawn by the courts between a friendly and a hostile fire, and it is held that if fire is employed as an agent, for the ordinary purposes of heating the insured building, for the purposes of manufacture, or as an instrument of art, the insurer is not liable for the consequences thereof, so long as the fire itself is confined within the limits of the agencies employed. Accordingly, where premises are insured against loss by fire, and fire is employed on the premises for economic or scientific purposes, and it is confined to the agencies intended, and damage ensues from smoke, soot, excessive heat, etc., without any actual ignition of the insured property, the loss is generally held not to be within the protection of the policy."

In 26 C. J., Fire Insurance, § 429, the same rule is stated. It adds: "* * * as a general rule to constitute a 'direct loss or damage by fire,' within the usual terms of a policy," the fire "must be a hostile fire, that is one which becomes uncontrollable or breaks out from where it was intended to be, and becomes a hostile element." See, also, Annotation, 20 A. L. R. 967.

As has been stated, the rule originated with Austin v. Drew, 4 Campb. 360. However, a reading of that case will disclose that Lord Chief Justice Gibbs did not base the distinction between what is now called a "friendly" fire and a "hostile" fire only on the locus or the place where the fire was burning. He stated in the opinion (4 Campb. 361):

"* * * There was no more fire than always exists * * *. * * * which [the fire] continued all the time to burn without any excess. * * *

\* \* \* \* \*

"* * * Had the fire been brought out of the flue, and any thing had been burnt, the Company would have been liable. But can this be said, where the fire never was at all excessive, and was always confined within its proper limits?"

The rule as stated in the texts above cited and in the decided cases ignores entirely these references to the nature of the fire in question, that it continued "to burn without any excess" and "never was at all excessive." The excessiveness of the fire, however great and destructive it might be if confined to the place where it was intended to be, has been considered immaterial in determining whether a fire was "friendly" or "hostile." Although the result we are reaching is contrary to the great majority of decided cases, there is a respectable minority supporting it.

This court, in Zamboni v. Implement Dealers Mutual Fire Ins. Co. 174 Minn. 122, 218 N. W. 457, recognized the distinction between "friendly" and "hostile" fires. In that case gasoline vapors exploded when a smoker attempted to light a cigarette with a match. The court said (174 Minn. 124, 218 N. W. 458):

"* * * This would be an innocent or friendly flame or fire and an explosion resulting therefrom would not be covered by the policy in question. * * *

\* \* \* \* \*

"* * * It is impossible to suggest any practical theory by which that flame was converted into a hostile fire before the explosion."

Professor William R. Vance in his article, *Friendly Fires,* 1 Conn. Bar J. 284, 289, says:

"* * * A fair paraphrase of Gibbs' description of a fire 'not within the meaning of the policy',—a friendly fire—would seem to fix these elements;

"(1)   The fire must have been intentionally kindled.

"(2)   It must be confined to the place where it was intended to be.

"(3)   It must not be excessive."

The first case which refused to follow the rule laid down in cases and textbooks is O'Connor v. Queen Ins. Co. 140 Wis. 388, 122 N. W. 1038, 25 L.R.A. (N.S.) 501. In that case a fire built in a furnace with unsuitable material, which became in a measure uncontrollable and developed excessive and extraordinary heat so intense in the chimney as to char woodwork, wallpaper, and furniture and which caused volumes of smoke and soot to escape through the registers and upon personal property, was held to be a "hostile" fire although there was no ignition outside of the furnace. The court said (140 Wis. 390, 394, 122 N. W. 1039, 1041):

"Appellant insists that a fire confined within the limits of a furnace, although producing damage by smoke and heat, is not a fire within the meaning of the policy in question, and relies mainly upon the case of Austin v. Drew, 4 Camp. 360. * * *

* * * * *

"* * * Austin v. Drew, 4 Camp. 360, is not authority against plaintiff here. There the fire was under control, not excessive, and suitable and proper for the purpose intended. It was, in the language of the books, a 'friendly' and not a 'hostile' fire. In the case before us the fire was extraordinary and unusual, unsuitable for the purpose intended, and in a measure uncontrollable, besides being inherently dangerous because of the unsuitable material used. Such a fire was, we think, a 'hostile' fire and within the contemplation of the policy."

This court referred to the O'Connor case in Chute v. North River Ins. Co. 172 Minn. 13, 15, 214 N. W. 473, 474, 55 A. L. R. 938, 940, where it said:

"* * * Interesting in this connection are the 'friendly fire' cases in which it is held that damage, in order to be recoverable under the or-

dinary fire policy, must arise from a 'hostile' as distinguished from a 'friendly' fire. They are reviewed in O'Connor v. Queen Ins. Co. 140 Wis. 388, 122 N. W. 1038, 133 A. S. R. 1081, 17 Ann. Cas. 1118, annotated, 25 L.R.A. (N.S.) 501."

In Frings v. Farm Bureau Mutual Fire Ins. Co. 99 Ohio App. 293, 133 N. E. (2d) 407, the fire resulted from a defective thermostatic control. The defect was such that the stoker fed coal into the furnace continually, the heat becoming so intense that it melted the outer wall of the fire box and the flames escaped into the water compartment. The court held that it was a "hostile" fire and allowed recovery for damages to the furnace, which was a fixture covered by the insurance policy.

In two other earlier Ohio cases the question was considered. In Stillpass v. Fidelity & Guaranty Fire Corp. 71 Ohio App. 197, 199, 48 N. E. (2d) 1017, 1018, the court said:

"* * * In this case the fire was both friendly and hostile. While it was serving the purpose intended, it could be said to be friendly, but when it got beyond control and became destructive, it ceased to be friendly and became hostile."

In Holmes v. Employers' Lia. Assur. Corp. 70 Ohio App. 239, 259, 43 N. E. (2d) 746, 754, the court in dictum stated:

"* * * We quite agree that a normal fire in a firebox under a boiler would not be a hostile fire, but where such fire is operated in such a manner or under such conditions that it gets out of control and develops a heat of from 2,800 to 3,200 degrees, it must then be considered a hostile fire."

For other cases on this question, see Progress Laundry & Cleaning Co. v. Reciprocal Exch. (Tex. Civ. App.) 109 S. W. (2d) 226; Pappadakis v. Netherlands Fire & Life Ins. Co. 137 Wash. 430, 242 P. 641, 49 A.L.R. 402; Salmon v. Concordia Fire Ins. Co. (La. App.) 161 So. 340; Way v. Abington Mutual Fire Ins. Co. 166 Mass. 67, 43 N. E. 1032, 32 L.R.A. 608; Cabbell v. Milwaukee Mechanics Ins. Co. 218 Mo. App. 31, 260 S. W. 490.

In Cabbell v. Milwaukee Mechanics Ins. Co. *supra,* the only fire

outside the appointed place was in some live coals which had been hurled onto the earthen floor of a basement by the force of an explosion in a furnace. The insured's damage appears to have been caused by the smoke and soot given off by the coals. It was held that the insurer was liable for the whole damage because the coals outside the furnace transformed the "friendly" fire into a "hostile" one.

It can also be argued, and we think successfully, that the fire here in question was not confined to its usual limits—the interior of the oven. When the firemen arrived, the hardwood floor in front of and underneath the oven was charred clear through in two places, each the size of one's hand. The room was filled with smoke from the charring. The fire captain said that charring and burning were the same thing. In 6 Wd. & Phr. (Perm. ed.) p. 549, it is stated:

"The definition of 'char' is to reduce wood to a coal by burning." And in Webster's New International Dictionary (2 ed.) (1950) p. 359, "burn" and "char" are held to be synonymous. No doubt, if discovery had not been made when it was, the building might have been destroyed or seriously damaged. This charring or burning came, of course, from the excessive fire in the oven. It does not seem realistic to say that the fire escapes from the place in which it is supposed to be confined only when the flames themselves escape. There is only one fire. Burning and charring are caused by this fire. The capacity to burn has escaped from the place where the flames were confined. In our opinion the uncontrolled and destructive excessive fire was a "hostile" fire. It was also a "hostile" fire since its destructive force extended into the room outside the oven, causing burning. The characteristics of this fire are such as to make it impossible for us to designate it as a "friendly" fire, even in law. We think that it was a "hostile" fire in law as it certainly was in fact.

"* * * A friendly fire is fire under control; and a fire beyond control is hostile, whether it be in or out of its proper place."

This is the opinion of Professor William R. Vance as expressed in *Friendly Fires,* 1 Conn. Bar J. 284, 292. He said further (p. 293):

"\* \* \* It is to be hoped that the doctrine of the 'friendly' fire may be shrunk to the original form given it by Chief Justice Gibbs, \* \* \*."

The writer on this subject in 21 Cornell L. Q. 318, 321, has this to say:

"\* \* \* The excessive or unusual fire \* \* \* should be included in those termed 'hostile' fires, for certainly this is a fire accidental to the insured."

In our opinion the fire which damaged plaintiff's oven was a "hostile" fire and the insurance policy covered the loss. The court was in error in holding the fire to be a "friendly" fire and that the loss incurred was therefore not covered by the policy.

Judgment reversed.