Ronald ENGEL, Respondent,

v.

REDWOOD COUNTY FARMERS
MUTUAL INSURANCE
COMPANY, Appellant.

No. 48873.

Supreme Court of Minnesota.

April 6, 1979.

Gislason, Dosland, Malecki, Gislason & Halverson, Robert M. Halverson, and C. Thomas Wilson, New Ulm, for appellant.

Franta & Gomsrud and John N. Franta, Wabasso, for respondent.

Heard before ROGOSHESKE, PETERSON and KELLY, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This is an appeal from a judgment entered in the District Court of Redwood County. The plaintiff brought this action alleging that defendant-insurer was liable under a fire insurance policy for a loss occasioned by the death of a number of plaintiff's sows.

The trial court, after trying the case on a stipulated set of facts, found that the loss was covered under the terms of plaintiff's policy and accordingly entered judgment for the plaintiff. We affirm.

The issue presented on appeal is whether a loss caused by excessive heat from a fire intentionally kindled and wholly confined to the furnace wherein it was intended to burn is covered under an insurance policy provid-

ing coverage for all losses or damage by fire.

The facts are not in dispute. The plaintiff was insured under a "Minnesota Standard Township Mutual Fire Insurance Policy" issued by defendant. In 1973, the plaintiff constructed a hog barn on his farm for use in farrowing hogs. The barn was heated by an L. B. White furnace which was located just outside the building and which blew hot air into the barn by means of a fan. The furnace was controlled by a thermostat which could be adjusted to shut off the fan and furnace at a pre-set temperature.

On January 1, 1976, the plaintiff discovered that 15 of the 16 sows then in the hog barn were dead. Subsequent investigation revealed that the sows died from an inadequate supply of oxygen in the hog barn, caused by increased temperature. The high temperatures resulted from a "short" which rendered the thermostat inoperable allowing the furnace to blow hot air into the barn until the high limit control, set at 120°, shut down the furnace. The thermostat was set at 75° and this was normally as high as temperatures inside the building would rise. At all times the fire inside the furnace burned and produced heat at its usual rate and was confined within the furnace causing no damage to the hog barn or to the furnace nor producing any soot or other foreign material.

Defendant refused to compensate plaintiff, claiming that the loss was not recoverable under his policy as it was the result of a so-called "friendly" rather than "hostile" fire.

The hostile fire doctrine is said to have originated in the early English case of *Austin v. Drew,* 4 Campb. 360 (1815).[1] In that case, sugar being refined in plaintiff's factory was damaged by excessive heat and smoke. The sugar was contained in various rooms of an 8-story building through which ran a flue supplying the heat necessary for the refining process. At the top of the flue

was a register which was normally kept open when the fire was high. An employee started the fire without opening the register. As a result, the fire overheated, smoking up the rooms containing the sugar and causing the damage complained of. The court, in denying recovery, stated:

"I am of the opinion that this action is not maintainable. There was no more fire than always exists when the manufacture is going on. Nothing was consumed by fire. The plaintiff's loss arose from the negligent management of their machinery. The sugars were chiefly damaged by the heat; and what produced that heat? Not any fire against which the company insures, but the fire for heating the pans, which continued all the time to burn without any excess. The servant forgot to open the register by which the smoke ought to have escaped and the heat to have been tempered." 4 Campb. 361.

From this opinion has emerged a rule of law known as the hostile fire doctrine. It is recognized in a majority of jurisdictions where the issue has been raised, 44 Am. Jur.2d, Insurance, § 1348; 5 Appleman, Insurance Law and Practice, § 3082, although it has been criticized by many commentators. See Vance, *Friendly Fires,* 1 Conn.Bar J. 284; Reis, *The Friendly Versus Hostile Fire Dichotomy,* 12 Vill.L.Rev. 109; Morrison, *Concerning Friendly Fires,* 3 Boston C.Indus. & Com.L.Rev. 15. In brief, the rule generally states that a fire which is intentionally kindled and which remains at all times confined to the place where it was intended to be will be characterized as friendly and will not subject the insurer to any liability for the resulting loss. By adopting this doctrine, courts have in effect established a presumption, seemingly irrebuttable, that the parties to the transaction, particularly the prospective insured, were aware of this doctrine and contemplated its inclusion in the policy. Common sense tells us that this is more than likely not the case.

---

1. Although this case is often cited as first originating the hostile fire doctrine, the terms hostile and friendly fire first appeared in the case of *Way v. Abington Mutual Fire Ins. Co.,* 166 Mass. 67, 43 N.E. 1032 (1896).

When an insured buys a fire insurance policy which "covers all losses or damage by fire" his expectation is that it will cover all unintentional losses from fire, except listed exclusions, regardless of the nature or character of the fire. The doctrine thus seems to protect the insurer at the expense of the unwitting insured.

In Minnesota, this problem is avoided because of the judicially created limitations on friendly fires. In *L. L. Freeberg Pie Co. v. St. Paul Mutual Insurance Co.,* 257 Minn. 244, 100 N.W.2d 753 (1960), we joined a minority of courts which require that a friendly fire, in addition to the elements listed above, be non-excessive. In the *Freeberg* case, the thermostat on a bake oven failed and, as a result, the flame inside the oven continued to build up to such a degree as to seriously warp and damage the oven. The lower court determined that, because the fire in the oven was intentionally kindled and only burned in its intended place, it was a friendly fire and recovery was precluded.

■ On appeal, we reexamined the *Austin* decision and aligned ourselves with the minority, reasoning as follows:

"As has been stated, the rule originated with *Austin v. Drew,* 4 Campb. 360. However, a reading of that case will disclose that Lord Chief Justice Gibbs did not base the distinction between what is now called a 'friendly' fire and a 'hostile' fire only on the locus or the place where the fire was burning. He stated in the opinion (4 Campb. 361):

" ' * * * There was no more fire than always exists * * *. * * * which [the fire] continued all the time to burn without any excess. * * *

* . * * * * *

" ' * * * Had the fire been brought out of the flue, and any thing had been burnt, the Company would have been liable. But can this be said, where the fire never was at all excessive, and was always confined within its proper limits?'

The rule as stated in the texts above cited and in the decided cases ignores entirely these references to the nature of the fire in question, that it continued 'to burn without any excess' and 'never was at all excessive.' The excessiveness of the fire, however great and destructive it might be if confined to the place where it was intended to be, has been considered immaterial in determining whether a fire was 'friendly' or 'hostile.' Although the result we are reaching is contrary to the great majority of decided cases, there is a respectable minority supporting it." 257 Minn. at 248, 100 N.W.2d at 755.

Under the *Freeberg* case, a fire may be found to be hostile although it was intentionally kindled and never escaped its confines if it was excessive or uncontrolled. 257 Minn. 251, 100 N.W.2d 757. See, *Fiorito v. California Insurance Co.,* 262 Minn. 340, 114 N.W.2d 661 (1962); Accord, *Barcalo Mfg. v. Firemen's Mut. Ins.,* 24 A.D.2d 55, 263 N.Y.S.2d 807 (1965); *O'Connor v. Queen Ins. Co.,* 140 Wis. 388, 122 N.W. 1038 (1909).

■ In the case before us defendant argues that even under the minority rule it should not be held liable because the fire was in no way excessive. In support of this contention, defendant points to the stipulated facts which state:

"The fire inside the furnace burned and produced heat at its usual rate."

Defendant reasons that if the furnace burned only at its usual rate it could not possibly be excessive. We disagree. A fire which causes damage by burning for a greater length of time than intended is no less uncontrolled merely because it continues to burn at its usual rate. See, generally, Morrison, *Concerning Friendly Fires,* 3 Boston C.Indus. & Com.L.Rev. 15.

Returning to the facts before us, the malfunctioning thermostat caused the furnace to burn continuously until the temperature reached 120°—well beyond the pre-set temperature of 75°. We do not believe that under these circumstances this fire can be described as controlled. It burned for an excessive period of time resulting in temperatures much greater than those intended, causing the loss complained of. By charac-

terizing this fire as hostile we are in no way departing from our prior decisions. We merely hold that a fire may be hostile although burning at its usual rate if it burns substantially longer or in some fashion other than expected. For the above reasons, we affirm the decision of the trial court.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.